IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT W. HILL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 07-1709 |
| | ) | (Related to CA No. 08-1404 |
| BEST MEDICAL INTERNATIONAL, | ) | and CA No. 09-1194) |
| INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | | |
| BEST MEDICAL INTERNATIONAL, | ) | |
| INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 08-1404 |
| | ) | (Related to CA No. 07-1709 |
| DAVID SPELLMAN, JOHN DAVID | ) | and CA No. 09-1194) |
| SCHERCH and MARCUS D. BITTMAN, | ) | (All cases consolidated at |
| | ) | CA No. 07-1709) |
| Defendants. | ) | |
| | | |
| BEST MEDICAL INTERNATIONAL, | ) | |
| INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 09-1194 |
| | ) | (Related to CA No. 07-1709 |
| ACCURAY, INC., a corporation, | ) | and CA No. 08-1404) |
| ROBERT HILL, DAVID SPELLMAN, | ) | (All cases consolidated at |
| JOHN DAVID SCHERCH, MARCUS | ) | CA No. 07-1709) |
| BITTMAN, JOHN DOE ONE, JOHN | ) | |
| DOE TWO, JOHN DOE THREE, JOHN | ) | |
| DOE FOUR and JOHN DOE FIVE, | ) | |
| individually, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

On October 25, 2011, this Court issued a Memorandum Opinion

and Order (Doc. Nos. 164 and 165) granting summary judgment in

favor of Robert Hill, Plaintiff in Hill v. Best Medical
International, Inc., CA No. 07-1709; in favor of Defendants David
Spellman, John David Scherch, and Marcus D. Bittman, (collectively,
the "Spellman Defendants") in a suit brought by Best Medical
International, Inc. ("Best Medical"), at CA No. 08-1404; and in
favor of Accuray, Inc. ("Accuray"), Hill, and the Spellman
Defendants[1] at CA No. 09-1194, also brought by Best Medical. A
monetary judgment was entered in favor of Hill. (Doc. No. 167, as
amended at No. 169.)

The Spellman Defendants and Accuray have now moved for
attorneys' fees and expenses, arguing that Best Medical filed suit
against them in bad faith and without reasonable investigation.
(Doc. Nos. 168 and 170.) The facts of these cases are set out in
detail in the October 25, 2011 Memorandum Opinion ("Opinion") and
will not be reiterated here. However, a summary of the procedural
history is provided because it is a factor in the Court's decision
to grant the pending motions.

I. **PROCEDURAL HISTORY**

Hill filed a single-count suit in this Court on December 14,
2007, alleging breach of contract arising from Best Medical's
refusal to pay severance benefits to which he believed he was

---

[1] As noted in the October 25, 2011 Opinion, in addition to claims against
Hill, the Spellman Defendants, and Accuray, Best Medical also brought
suit against John Does 1 through 5 who were apparently employees of
Accuray. (See Opinion at 9, n.4.)

entitled after leaving his employment with Best Medical ("the Hill Case.") On February 15, 2008, Best Medical filed its answer and affirmative defenses, along with four counterclaims, the third of which was that Hill had violated the Pennsylvania Uniform Trade Secrets Act, 12 Pa. C.S. § 5301 *et seq.* ("PUTSA"), by misappropriating confidential and trade secret information belonging to Best Medical when he left its employ. (Doc. No. 3.)

On March 25, 2008, Hill and Best Medical entered into a stipulated motion for a permanent injunction which prohibited Hill from using any of Best Medical's "confidential and proprietary information and trade secrets" in any way, including during the course of his new employment with Accuray. (Doc. No. 7, "the Hill Stipulation.")  Hill also agreed to return all hard copies of Best Medical documents in his possession and to provide to a third-party computer forensics examiner all of his computers and electronic data storage media which might contain "Confidential Information" as that term was defined in the stipulated order.  With some agreed-upon privilege restrictions in place, the forensics examiner would search the computerized data to identify Best Medical information and any correspondence between Hill and Accuray dating from July 1, 2007, to October 4, 2007, the date on which he resigned from Best Medical.  After a bit-by-bit image of Hill's computers had been made and placed in a locked box under the control of Hill's attorneys, Hill would permit the examiner to

3

overwrite all information belonging to Best Medical on any computer or storage media he retained. Best Medical did not object to Hill continuing to work for Accuray despite the fact that he had entered into non-compete agreements with both Best Medical and its predecessor. At no time during the course of this litigation has Best Medical ever protested that Hill violated the stipulation of March 25, 2008, in any way.

A case management order entered on April 24, 2008, set a post-discovery conference for October 7, 2008. On October 6, 2008, Best Medical filed suit against Spellman, Scherch, and Bittman. (Best Medical Int'l v. Spellman *et al.*, "the Spellman Case.") Counts I through VI alleged the Spellman Defendants had breached various employment agreements with Best Medical when they went to work for Accuray and Count VII alleged that all three had violated the PUTSA by providing Accuray with confidential and trade secret information. On November 4, 2008, the Spellman Defendants and Best Medical entered into an agreement containing essentially the same terms and conditions as those in the Hill Stipulation and which allowed the Spellman Defendants to continue working at Accuray except in four specifically described areas. (Doc. No. 14.)

Based on the representations of the parties that they were engaging in serious settlement negotiations, the Court temporarily suspended discovery deadlines in both cases on December 3, 2008, and again on February 25, 2009. Joint mediation eventually took

4

place on June 19, 2009; it was unsuccessful.  A status conference was set for July 14, but when Best Medical changed counsel on July 13, the conference was postponed until September 10, 2009.

On September 2, 2009, Best Medical filed another complaint, this time against Hill, the Spellman Defendants,[2] and Accuray. (*See* Best Medical Int'l v. Accuray, Inc., *et al.*, "the Accuray Case.") The Hill and Spellman Cases were again stayed until the pleadings in the Accuray Case were closed.  The stay was lifted on February 18, 2010, and a case management conference was held on March 16, 2010.  At that time, a joint case management order was entered, directing the cases to be consolidated for all pre-trial proceedings.  On May 13, 2010, Accuray filed the first of a series of motions seeking to compel Best Medical to identify with the requisite specificity the trade secrets alleged to have been misappropriated by its former employees and Accuray.  The cases were once more referred to mediation to be held on June 3, 2010. That day, Best Medical filed a motion to amend its complaint in the Accuray Case, seeking to add a claim for patent infringement (Doc. No. 51), which the Court denied on June 24, 2010. (Doc. No. 61.)

More than a year later, following a number of motions to compel, two depositions of Best Medical's corporate representatives, and extensive briefing, the Court granted summary

---

[2]   Collectively, Hill, Bittman, Scherch, and Spellman will be referred to as the "Individual Defendants."

judgment in favor of Hill, the Spellman Defendants, and Accuray in all three cases.  On November 21, 2011, Best Medical appealed the decisions to the United States Court of Appeals for the Third Circuit.  In the meantime, the Spellman Defendants and Accuray filed motions for attorneys' fees, to which Best Medical has responded.  The parties having fully briefed their positions, the matter is now ripe for decision.

## II.  **APPLICABLE LAW**

Rule 54(d)(2) of the Federal Rules of Civil Procedure provides that except under some conditions not applicable here, within fourteen days after entry of judgment the prevailing party may file a motion claiming "attorney's fees and related nontaxable expenses."  Fed. R. Civ. P. 54(d)(2)(A) and (B)(i).  The motion must "specify the judgment and the statute, rule, or other grounds entitling the movant to the award" and "state the amount sought or provide a fair estimate of it."  Id. at (B)(ii) and (iii).  The opposing party must be given an opportunity to state its objections to the motion.  Id. at (C).

Here, summary judgment was granted in favor of Defendants on all claims as of October 25, 2011, and Defendants' motions were timely filed on November 8.  Best Medical was given the opportunity to respond to each motion and has done so.  (See Docs. No. 174 and 175.)  In each motion, Defendants rely on three alternative bases for their claims:  Section 5305 of the PUTSA, 28 U.S.C. § 1927, and

the inherent power of the court.

A.   Attorneys' Fees and Expenses under PUTSA

The Pennsylvania Uniform Trade Secrets Act, which closely follows the model Uniform Trade Secrets Act ("UTSA") as adopted by numerous other states, allows a court to

> award reasonable attorney fees, expenses and costs to the prevailing party:
>
> (1) if a claim of misappropriation is made in bad faith;
>
> (2) a motion to terminate an injunction is made or resisted in bad faith; or
>
> (3) willful and malicious misappropriation exists.

12 Pa. C.S. § 5305.

Defendants' claims for fees and expenses are brought under § 5305(1).  As the parties acknowledge, no reported Pennsylvania case has discussed this specific issue[3] and the term "bad faith" is not defined in the PUTSA.  In the context of discerning the meaning of the term as applied under 28 U.S.C. § 1927 (discussed below), the Third Circuit Court of Appeals has stated that indications of bad faith include evidence that the claims advanced were meritless or that the motive for filing the suit was for an improper purpose such as harassment.  In re Prudential Ins. Co. Am. Sales Practice Litig. Actions, 278 F.3d 175, 188 (3d Cir. 2002).  Other federal

---

[3]   Yountie v. Macy's Retail Holding, Inc., 653 F. Supp.2d 612, 630-631 (E.D. Pa. 2009), and Fisher Bioservices, Inc., v. Bilcare, Inc., CA No. 06-567, 2006 U.S. Dist. LEXIS 34841, *50-*54 (E.D. Pa. May 31, 2006), both discuss the award of attorneys' fees under § 5305(3).

courts have provided similar definitions in the context of claims brought under their versions of the UTSA. *See*, e.g., ANSYS, Inc. v. Computational Dynamics N. Am., Ltd., CA No. 09-284, 2011 U.S. Dist. LEXIS 13993, *7 (D. N.H. Feb. 10, 2011), concluding that under New Hampshire law, "[a] party pursues a claim in bad faith if the claim is frivolous," i.e., one which "lacks any reasonable basis in the facts provable by evidence, or any reasonable claim in the law as it is, or as it might arguably be held to be"); and Sun Media Sys., Inc. v. KDSM, LLC, 587 F. Supp.2d 1059, 1072 (S.D. Iowa 2008), noting that under Iowa law, a suit brought in bad faith carries the connotation of being "frivolous, unduly prolonged and harassing in nature," as compared to being "the result of sincere difference of opinion or interpretation of fact or law."

The California Uniform Trade Secrets Act ("CUTSA") contains language almost identical to that of § 5305 of the PUTSA. *See* Cal. Civ. Code § 3426.[4]  In addressing the issue of what constitutes bad faith of the type and degree sufficient to support an award of attorneys' fees, the California Court of Appeal held that establishing bad faith under the CUTSA requires proof of two elements: (1) "objective speciousness of the plaintiff's claim," and (2) "subjective bad faith in bringing or maintaining the claim." Gemini Aluminum Corp. v. Cal. Custom Shapes, Inc., 95 Cal. App. 4th 1249, 1262 (Ct. App. 2002).[4]  Other courts from numerous

---

[4]   Although the PUTSA does not contain a provision directly relating to

jurisdictions have followed this test in considering the same provision of the UTSA. *See*, in addition to cases from California state and district courts, CRST Van Expedited, Inc., v. Werner Enters., Inc., 479 F.3d 1099, 1111 (9th Cir. 2007); Rent Info Tec., Inc. v. Home Depot U.S.A. Inc., Nos. 06-55829 and 06-56259, 2008 U.S. App. LEXIS 4675, *8-*9 (9th Cir. Feb 28, 2008) (applying Georgia UTSA and affirming application by district court of the Gemini Aluminum test); Contract Materials Processing, Inc. v. Kataleuna GmbH Catalysts, 222 F. Supp.2d 733, 744 (D. Md. 2002); Norwood Operating Co. v. Beacon Promotions, Inc., CA No. 04-1390, 2006 U.S. Dist. LEXIS 80237, * 4 (D. Minn. Oct. 31, 2006); Degussa Admixtures, Inc. v. Burnett, 471 F. Supp.2d 848, 857 (W.D. Mich. 2007), *aff'd*, 2008 U.S. App. LEXIS 10017, *10-*11 (6th Cir. May 5, 2008); and Sun Media Sys., 587 F. Supp.2d at 1072-1073.

"Objective speciousness exists where there is a complete lack of evidence supporting plaintiff's claims." Contract Materials, 222 F. Supp.2d at 744, *quoting* Computer Econs., Inc. v. Gartner Group, Inc., CA No. 98-0312, 1999 U.S. Dist. LEXIS 22205, *17 (S.D. Cal. Dec. 14, 1999). "Subjective misconduct exists where a

---

statutory construction, the enactments of the UTSA by other states frequently include language directing that the statute is to be "applied and construed to effectuate its general purpose to make uniform the law with respect to [trade secrets] among the states enacting it." *See*, e.g., Cal. Civ. Code § 3426.8, 6 Del. C. § 2008, or Conn. Gen. Stat. § 35-58. In keeping with this understanding, we have been guided by the reasoning of courts from other jurisdictions, especially since the Third Circuit Court of Appeals and the Pennsylvania Supreme Court have not spoken on the issues addressed herein.

plaintiff knows or is reckless in not knowing that its claim for trade secret misappropriation has no merit." Computer Econs., Inc., id. at *18.

The Court finds the Gemini Aluminum test is applicable herein and will employ its two-prong test in determining whether Plaintiff acted in bad faith with regard to its trade secrets claims.

B.   28 U.S.C. § 1927

Section 1927 of Title 28 provides that

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.

"[T]he principal purpose of imposing sanctions under 28 U.S.C. § 1927 is the deterrence of intentional and unnecessary delay in the proceedings." Zuk v. Eastern Pa. Psychiatric Inst., 103 F.3d 294, 297 (3d Cir. 1996) (internal quotation omitted.)  Our Court of Appeals has noted that it is "well settled in the Third Circuit that 28 U.S.C. § 1927 requires a finding of four elements for the imposition of sanctions:  '(1) multiplied proceedings; (2) unreasonably and vexatiously; (3) thereby increasing the cost of the proceedings; (4) with bad faith or with intentional misconduct.'"   In re Beers, No. 10-1105, 2010 U.S. App. LEXIS 22475, *2 (3d Cir. Oct. 29, 2010), *quoting* LaSalle Nat'l Bank v.

First Conn. Holding Group, LLC, 287 F.3d 279, 288 (3d Cir. 2002);
see also In re Prudential Ins. Co., 278 F.3d at 188.

    In determining if the action of the attorney or law firm was
unreasonably or vexatious, the court must keep in mind that
"misunderstanding, bad judgment, or well-intentioned zeal" are not
sufficient reasons for applying such sanctions. LaSalle Nat'l
Bank, 287 F.3d at 289. Nor can the sanction be applied if the
attorney has been no more than negligent. Zuk, 103 F.3d at 298.
Instead, sanctions under § 1927 "must be supported by a finding of
subjective bad faith," meaning that the attorney has "knowingly or
recklessly raise[d] a frivolous argument or argue[d] a meritorious
claim for the purpose of harassing an opponent." Moore v. Keegan
Mgmt. Co., 78 F.3d 431, 436 (3d Cir. 1996) (internal quotations
omitted.) In addition, the court must also be mindful that § 1927
applies only to unnecessary filings after the suit has been filed
and not to initial pleadings. Id. at 435. Finally, sanctions
imposed under § 1927 are limited to excess costs and expenses
incurred "because of such conduct." LaSalle Nat'l Bank, 287 F.3d
at 288, further noting that courts should exercise this power "only
in instances of a serious and studied disregard for the orderly
process of justice." (Internal quotation omitted.)

    C.   The Court's Inherent Power to Sanction

    A court has the inherent authority to sanction parties
for refusing to comply with its orders and in order to control

11

litigation before it.  Adams v. Corr. Corp. of Am., CA No. 10-259,
2011 U.S. Dist. LEXIS 120705, *6 (M.D. Pa. Oct. 19, 2011), *citing*
Tracinda Corp. v. DaimlerChrysler AG, 502 F.3d 212, 242 (3d Cir.
2007), and Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991).
However, "[b]ecause of their very potency, inherent powers must be
exercised with restraint and discretion." Chambers, 501 U.S. at
44. Instead, a court should first determine if another rule- or
statute-based sanction is "up to the task." Montrose Med. Group
Participating Sav. Plan v. Bulger, 243 F.3d 773, 785 (3d Cir.
2001). Where the sanction contemplated includes shifting
attorneys' fees to the losing party, a practice normally not
allowed under the American Rule, the court must find that the
losing party exhibited bad faith. Republic of Philippines v.
Westinghouse Elec. Corp., 43 F.3d 65, 74 n.11 (3d Cir. 1994),
*citing* Langdon v. Hunt, 938 F.2d 450, 454 (3d Cir. 1991), and
Chambers, id. at 45-46.

The Court of Appeals has clearly outlined the situations in
which a court may invoke its inherent powers to sanction a party or
attorney appearing before it. As stated in Prudential Ins. Co.,

> Circumstances that may justify sanctions pursuant to a
> court's inherent power include cases where a party has
> acted in bad faith, vexatiously, wantonly, or for
> oppressive reasons. . . .The imposition of sanctions in
> this instance transcends a court's equitable power
> concerning relations between the parties and reaches a
> court's inherent power to police itself, thus serving the
> dual purpose of vindicating judicial authority without
> resort to the more drastic sanctions available for
> contempt of court and making the prevailing party whole

for expenses caused by his opponent's obstinacy. . . .
Therefore, generally, a court's inherent power should be
reserved for those cases in which the conduct of a party
or an attorney is egregious and no other basis for
sanctions exists.

Id., 278 F.3d at 188-189 (internal citations and quotations
omitted.)

## III. ANALYSIS AND CONCLUSIONS

As noted in Section I above, Best Medical has consistently
claimed that Hill and the Spellman Defendants "wrongfully copied
and retained confidential, proprietary and trade secret
information" belonging to Best Medical and shared this information
with Accuray in violation of the Pennsylvania Uniform Trade Secrets
Act. (Accuray Case, Complaint, ¶¶ 45-46.) In a nutshell, the
Court concluded at summary judgment that Best Medical had failed to
establish a critical element of such a misappropriation claim,
namely, the existence of a trade secret. Not only had Plaintiff
failed to establish that any of the alleged trade secrets were
found on the computers or other electronic storage devices
belonging to the Spellman Defendants, but the two Best Medical
representatives proffered to testify "with particularity" about the
trade secrets in support of the PUTSA claim were unable to explain
why the information found on Hill's computer constituted protected
information. Therefore, in all three cases, the PUTSA
misappropriation claims were dismissed in their entirety.

Accuray and the Spellman Defendants argue that Best Medical's

13

bad faith in initiating the suits against them is reflected in (1) its failure to mediate the case in good faith; (2) the failures of the company and its attorneys to comply with discovery obligations and Court orders; and (3) the failure to voluntarily withdraw its claims after the deposition of Dr. George Cernica, its second Rule 30(b)(6) witness, whose testimony clearly established that Best Medical's misappropriation claims were "terminally deficient."

A.    The Spellman Case

As discussed at length in the Opinion, Bittman, Scherch, and Spellman all left Best Medical between October 2007 and June 2008 and went to work for Accuray.   On October 6, 2008, Best Medical sued the Spellman Defendants, claiming that it had learned of their new employment during the course of discovery in the Hill Case.   As noted above, on November 4, 2008, the parties entered into a stipulation which required the Spellman Defendants to return all hard copies of documents originating with Best Medical and to provide copies of their computer hard drives and other storage devices to Plaintiff's computer forensic examiner, but permitted them to continue working for Accuray. Best Medical has never complained that any of the Spellman Defendants breached that stipulated agreement.

The Spellman Defendants argue that the deposition testimony of Best Medical's Rule 30(b)(6) witnesses, O'Neal Mistry and Dr. Cernica, supports their position that Plaintiff did little or no

14

investigation prior to filing suit against them. (*See* Doc. No. 168, ¶¶ 12-14.) The limited excerpts from their testimony, however, appear to relate to the filing of the complaint in the Accuray Case, discussed below, not to the Spellman Case. We cannot agree, therefore, with the Spellman Defendants that Best Medical sued them in October 2008 without good cause and without adequate investigation. During the previous year, four senior employees, all of whom had access to confidential information and all of whom were bound by employment agreements that contained confidentiality and non-compete provisions, had left Best Medical to work for another company. They failed to advise Best Medical of their new positions and none had returned documents and computerized information when they left, despite requirements to do so in their employment agreements. Best Medical had discovered that Hill had retained some 17,000 files on his computer when he went to work for Accuray. Therefore, Plaintiff certainly would have been justified in believing that the Spellman Defendants could have done the same.

As discussed in the Opinion, the Court, following the lead of several other district courts in cases discussing the Uniform Trade Secrets Act, had required Best Medical to identify its trade secrets with "reasonable particularity" as an initial step in discovery. (*See* Opinion at 13-14; 17-18.) On June 24, 2010, in response to a motion by Accuray to compel discovery, the Court once

15

again ordered Plaintiff to state with reasonable particularity the confidential/proprietary business information and trade secrets alleged to have been misappropriated. The Court simultaneously granted Accuray's motion for a protective order, stating that pending compliance with the previous sentence, Best Medical was "precluded from obtaining any discovery relating to Accuray's trade secrets and confidential information." (See Doc. Nos. 59 and 60.) Despite this and several intervening orders, Best Medical made no serious effort to comply until November 15, 2010, when it produced a binder containing eight alleged trade secrets. Best Medical was later forced to admit that none of those trade secrets were found on computers belonging to the Spellman Defendants. (See Doc. No. 114, Exh. F, and Doc. No. 127.)

According to Defendants, the computer forensics examiner had made copies of their disk drives not later than November 24, 2008.[5] Thus, despite having had access to all the information on the Spellman Defendants' computers for two years, Best Medical failed to acknowledge that it had no evidence of misappropriation by Bittman, Scherch, or Spellman. Best Medical does not address this point in its response to the motion by the Spellman Defendants. (See Doc. No. 174.) In the absence of any explanation for this

---

[5] To the best of the Court's ability to discern, this date was not provided in the summary judgment materials, but we had assumed, based on other evidence, that the computer examiner had made the copies "not later than December 2008." (Opinion at 21.)

delay by Best Medical, we can only assume either that it did not promptly investigate the content of those computers or it withheld exculpatory information from Defendants.  In either case, we conclude, Best Medical did not proceed in good faith after gaining access to the computers in November 2008.

In arriving at this conclusion, we have also considered the affidavit of Krishnan Suthanthiran, President of Best Medical at the time of the events leading up to this litigation.  (*See* Doc. No. 182.)  In his affidavit, Mr. Suthanthiran states that he was "personally familiar" with the action; he was "involved in the retention and monitoring" of the first law firm hired to represent Best Medical; that during the course of the litigation, Plaintiff's "personnel were always ready[,] willing and able to assist counsel in the prosecution of this matter;" and that its "personnel identified to counsel at the beginning of this litigation the trade secrets at issue."  If the last statement is true, we can only conclude Mr. Suthanthiran did not do a very good job monitoring the two law firms engaged to represent Best Medical since neither of them ever communicated that information to Defendants until November 2010.  If Best Medical had already identified "the trade secrets at issue" (presumably based on its earlier examination of Hill's computer disks or other evidence ) when it filed suit in October 2008, then the failure to determine if any such information was on Defendants' computers for more than two years is even more

17

egregious.[6]

As noted above, subjective misconduct exists where a plaintiff knows or is reckless in not knowing that its claim for trade secret misappropriation does not have merit.  Best Medical knew or should have known that its misappropriation claims did not have merit as soon as its computer forensic examiner provided Plaintiff's personnel (who were always "ready, willing and able to assist counsel in the prosecution of this litigation") with the information taken from the Individual Defendants' computers so it could be compared to Best Medical's own trade secrets.  At that point, Best Medical's persistence in maintaining this litigation became an exercise in bad faith.  See Contract Materials, 222 F. Supp.2d at 744, noting that "the bad-faith exception for the award of attorney's fees [under the UTSA] is not restricted to cases where the action is filed in bad faith but may be found in the conduct of the litigation." (Internal alterations and quotations omitted.)  See also Roadway Express v. Piper, 447 U.S. 752, 766 (1980) ("Bad faith may be found, not only in the actions that led

---

[6] Nor are we are persuaded otherwise by the fact that at the eleventh hour, literally one day before the Spellman Defendants' motion for summary judgment was due, Best Medical provided them with "hundreds of pages" of documents which contained allegedly confidential, albeit not trade secret, information discovered on Defendants' computers.    As discussed in the Opinion, Best Medical never provided copies of the text of the so-called secrets to the Court and never explained why the documents should have been considered confidential information other than the perfunctory statement that they had been marked confidential by the originators.   (See Opinion at 88-90.)    We conclude this was simply another delaying or harassing tactic by Plaintiff.

to the lawsuit, but also in the conduct of the litigation.") We are satisfied that this prong of the test for bad faith as discussed in Gemini Aluminum has been satisfied.

We are also satisfied that the first prong – objective speciousness – has been satisfied. As noted throughout the Opinion, Best Medical failed entirely to come forth at summary judgment with evidence to support any of its misappropriation claims. The Court rejected Best Medical's argument that it had been prohibited from gathering such evidence by the Court's Order of June 24, 2010, because Plaintiff had to know that it would be allowed to proceed with full discovery just as soon as it identified the trade secrets that had allegedly been misappropriated. (See Opinion at 21-23.) The Court also repeatedly referred to the fact that Best Medical had failed to produce any evidence, much less evidence that raised genuine issues of material fact, on its other related claims. (See, e.g., Opinion at 47, 50, 55, 59, 67, 69, 86, 88, 93.) Most critically, Best Medical failed to produce a witness who could testify with particularity about the trade secrets supposedly misappropriated, even though counsel represented to the Court on January 13, 2011, that its second proposed witness, Dr. Cernica, would be able to testify about the cost to develop the trade secrets, their specific nature and functionality, what made them unique, and security

19

measures taken to protect them.[7] Such "complete lack of evidence supporting Plaintiff's claims" is the touchstone of objective speciousness. *See* Contract Materials, 222 F. Supp.2d at 744.

We find Best Medical should compensate the Spellman Defendants for their attorney fees and related expenses associated with defending against the PUTSA claim during the period February 1, 2009, through the date of this decision.  The February 1, 2009 date, more than two months after having received the copies of the Spellman Defendants' computer drives, reflects what we believe to be a reasonable period for Plaintiff to have made at least an initial, good faith, review of the file contents and to compare those contents to the trade secrets Best Medical personnel had purportedly identified "at the beginning of this litigation."

B.   Accuray Case

We reach a slightly different conclusion with regard to the suit filed against Accuray, the Spellman Defendants, and Hill. As noted previously, Best Medical received copies of Hill's computer files, including correspondence between himself and Accuray for the period July 1 through October 4, 2007, soon after

---

[7]    Best Medical contends that the Court found the Accuray expert "more persuasive" than Dr. Cernica.  (Doc. No. 175 at 6.)  The Court made no findings as to the relative "persuasiveness" of the parties' experts.  A more careful reading of the Opinion reflects the Court's conclusions that Dr. Cernica could not testify from his own knowledge about the computer code in question and was entirely unable to testify about the other topics he was purportedly familiar with as Best Medical's 30(b)(6) witness.  (*See* Opinion at 36-38.)

the parties entered into the Hill Stipulation on March 25, 2008.
Plaintiff filed its complaint in the Spellman Case one day before
the post-discovery status conference in the Hill Case was scheduled
and received copies of those Defendants' computers in late November
2008.   It filed suit against Accuray and the Individual Defendants
on September 2, 2009, alleging tortious interference with
contracts, civil conspiracy, violation of the PUTSA, aiding and
abetting breach of fiduciary obligations, conversion, and unfair
competition.    Based in part on this sequence of events, we
conclude Best Medical could not have filed suit against Accuray and
raised the additional claims against the Individual Defendants in
good faith.

By September 2, 2009, Plaintiff had had access to the computer
files of its four former employees almost one year.  According to
Best Medical, by July 2009, it had expended more than $402,700 with
its first law firm, presumably working on the Hill and Spellman
Cases and gathering facts which the second law firm used in its
preparation of the Accuray complaint.   But despite having had
access to the Individual Defendants' computers for at least ten
months before initiating this lawsuit, not one trade secret was
identified in the Complaint except in the most generic terms. And,
as discussed at length in the Opinion, two years later, Best
Medical utterly failed to provide evidence to support these and its
other claims when addressing the motions for summary judgment.

Contrary to Mr. Suthanthiran's affidavit that Best Medical had proceeded in good faith and in reliance on legal advice when filing suit against Accuray, both Mr. Mistry and Dr. Cernica testified that Plaintiff had done little or no investigation as to the validity of its claims of misappropriation prior to filing suit. Mr. Mistry testified he did not believe anyone at Best Medical had done any independent research about Accuray's IMRT system either before or after filing suit, did not talk with customers about the so-called competing systems, and conducted a literature search that consisted of looking at one brochure on the Accuray website.  Dr. Cernica stated that sometime in mid-December 2010 (well before his own deposition and the parties' motions for summary judgment), he had discussed with Best Medical personnel whether it was "worth going ahead" with the lawsuit. (*See* Doc. 170, Exh. A at 38-39, 217 and Exh. B at 17.)

At a hearing held on January 13, 2011, when explaining why a second Rule 30(b)(6) representative should be deposed concerning the alleged trade secrets, in-house counsel for Best Medical stated, "In a normal case, you would say the defense is holding everything up rather than the plaintiff. This is an odd case in which it appears that the plaintiff has been dragging its feet." (Doc. No. 112 at 35-36.)  We agree with this statement wholeheartedly and believe Best Medical dragged its feet for the better part of two years, knowing that its claims against Accuray

22

and the Individual Defendants were largely without merit.

We conclude Accuray, Bittman, Spellman, and Scherch are entitled to all of their attorneys' fees and expenses incurred as the result of having to defend the PUTSA claims, including the costs associated with filing the now-pending motion.  We base this decision on § 5305(1) of the PUTSA, having found that Best Medical initially brought its claims in bad faith and maintained its suit in bad faith even after it knew or should have known that the Spellman Defendants had not misappropriated its trade secrets.  We further conclude that responsibility for payment of these fees and expenses should be made entirely by Best Medical rather than its counsel.

In light of this decision, we need not reach the parties' other arguments regarding recovery under Section 1927 or the court's inherent powers.  Further details on establishing the amounts due to Accuray and the Spellman Defendants are set forth in the order which follows.

December 22, 2011                    _William L. Standish_____
                                         William L. Standish
                                     United States District Judge

23